UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 13-34196 |
| STEPHANIE ANN SCHAEFFER, ) | |
| ) | Hon. A. Benjamin Goldgar (Lake) |
| DEBTOR ) | |
| ) | Chapter 13 |

**TRIAL BRIEF OF TIMOTHY L. BOSSE IN SUPPORT OF HIS OBJECTION TO CONFIRMATION OF DEBTOR'S MODIFIED CHAPTER 13 PLAN**

NOW COMES TIMOTHY L. BOSSE ("Bosse") by and through his attorney, Joel A. Schechter of the Law Offices of Joel A. Schechter, and pursuant to the Final Pretrial Order entered June 2, 2014, herewith submits his trial brief in support of his objection to confirmation of the modified Chapter 13 plan filed by Debtor, Stephanie Ann Schaeffer ("Debtor") on June 12, 2014, as follows:

**BACKGROUND**

1. On August 27, 2013, the Debtor filed a voluntary petition pursuant to Chapter 13 of Title 11, U.S.C.("Case").

2. Bosse is a creditor of the Debtor.

3. On April 25, 2012, a judgment for dissolution of marriage was entered in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, IL ("Circuit Court") in Case No. 11 D 179 ("Judgment").

4. The Judgment dissolved the marriage of the Debtor and Bosse.

5. On August 27, 2013, the Debtor filed her schedules B, I and J.

6. On August 27, 2013, the Debtor filed her Chapter 13 statement of current monthly

disposable income.

7.     On August 27, 2013, the Debtor filed her initial Chapter 13 plan ("Plan").

8.     On September 30, 2013, the Debtor filed her amended schedule B.

9.     On October 1, 2013, the Debtor filed her modified Plan.

10.    On October 16, 2013, the Debtor filed her second modified Plan.

11.    On January 28, 2014, the Debtor filed her second amended schedule B.

12.    On January 28, 2014, the Debtor filed her amended schedules I and J.

13.    On February 11, 2014, the Debtor filed her third modified Plan.

14.    On February 11, 2014, the Debtor filed her second amended schedules I and J.

15.    On February 20, 2014, Bosse filed his objection to the third modified Plan.

16.    On February 27, 2014, the Debtor filed her fourth modified Plan.

17.    On March 11, 2014, Bosse filed his amended objection to the third modified Plan.

18.    On June 12, 2014, the Debtor filed her fifth modified Plan.

19.    On June 30, 2014, the Debtor filed her third amended schedule I.

20.    On June 30, 2014, the Debtor filed her amended Chapter 13 Statement of current monthly disposable income.

21.    On July 1, 2014, the Debtor filed her third amended schedule J.

22.    On July 11, 2014, the Court entered a minute order which provides that Bosse's amended objection filed on March 11, 2014, shall stand as his objection to the fifth modified Plan filed by the Debtor on June 12, 2014.

## BOSSE'S CLAIM

23.    On October 29, 2013, Bosse filed a priority proof of claim in the amount of

$21,097.80. In addition, the attachment appended to Bosse's claim asserts that the claim may be increased depending upon whether he is called upon to pay the mortgage expenses (or any deficiency claims) and/or real estate taxes and homeowners' association fees regarding the Pocono Pines, PA real estate once the foreclosure sale is completed. Bosse asserted that his claim was a domestic support obligation as defined in 11 U.S.C. §101(14A).

24. Pursuant to paragraph 2D of the Judgment, the Debtor and Bosse are to equally share expenses paid on behalf of the minor children including, but not limited to, health insurance premiums.

25. Pursuant to paragraph 13 of the Judgment, the Debtor and Bosse are to equally share the mortgage expenses, real estate taxes and homeowners' association fees with respect to real property commonly known as 25 Conestoga Trail, Pocono Pines, PA 18350 ("Pocono Pines").

26. Pursuant to paragraph 25 of the Judgment, the Debtor is to be solely responsible for the Capital One credit card account ending in 0063 and the Chase credit card account ending in 9188.

27. Notwithstanding the provisions of the Judgment, the Debtor scheduled the claim of Bosse on Schedule F as "Notice only" with an amount of "0" and listed the claim as "contingent, unliquidated, disputed".

28. On October 31, 2013, the Debtor filed her objection to Bosse's priority proof of claim.

29. After Bosse filed his response and the Debtor filed her reply, on February 7, 2014, the Court preliminarily ruled that part of Bosse's claim is a domestic support obligation and, thus, entitled to priority treatment and part of Bosse's claim is not a domestic support obligation and, thus, is to be treated as an unsecured claim. Bosse states that the ruling was "preliminary" in that

no order has yet been entered on the Debtor's objection to the claim.

## DEBTOR HAS BURDEN OF PROOF ON CONFIRMATION

30. The Debtor has the burden of proof on confirmation of her Plan. 11 U.S.C. §1325(a) provides that the court shall confirm a plan if..."(3) the plan has been proposed in good faith and not by any means forbidden by law; (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7...; (7) the action of the debtor in filing the petition was in good faith". Moreover, Section 1325(b)(1)(B) states that the court may not confirm a plan unless the debtor is paying all of the debtor's projected disposable income to unsecured creditors under the plan.

31. "...even if the debtor has the burden of proving good faith under *Section 1325* it does not mean that the debtor must bear the same burden under *Section 1307*'s provisions. This is because *Section 1325(a)(3)* explicitly states that a plan shall be confirmed if it 'has been proposed in good faith'." *In the Matter of Love*, 957 F.2d 1350, 1355 (7th Cir. 1992).

## PLAN NOT PROPOSED IN GOOD FAITH

32. Bankruptcy courts have been directed to look at the totality of the circumstances and to make good faith determinations as to confirmation of a plan on a case by case basis. *In re Rimgale*, 669 F.2d 426, 431 (7th Cir. 1982). "...the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court". *In the Matter of Love*, 957 F.2d at 1355.

33. When looking at the totality of the circumstances in the case at bar confirmation of the Plan should be denied for lack of good faith. The amended Chapter 13 Statement of current

monthly disposable income filed by the Debtor on June 30, 2014, reveals an above-median debtor with negative disposable income. But for the liability of the Debtor to Bosse pursuant to the Judgment, this case should be a Chapter 7 case. The Plan does not provide for the payment of any secured debt or priority debt (other than to Bosse, as the claim of the Internal Revenue Service which existed at the date of filing was paid by the seizure of both the Debtor's and Bosse's tax refunds). The only debts to be paid are unsecured debts which could be discharged in a Chapter 7 case. However, pursuant to 11 U.S.C. 523(a)(15), the debt owed Bosse pursuant to the Judgment could be held nondischargeable. Had Congress not omitted Section 523(a)(15) in Section 1328(a)(2), which has the effect of allowing debtors to pay less than the full amount of debts due former spouses that are not a domestic support obligation, the Debtor would have filed a Chapter 7 case. Bosse submits that the Debtor is deliberately avoiding payment of his debt by filing this case and providing for a paltry payment to unsecured creditors. The Debtor is abusing the process. "...the debtor filed bankruptcy to thwart payment to a particular creditor, thereby indicating a subjective intent to unfairly abuse the spirit of the Bankruptcy Code." *In the Matter of Love*, 957 F.2d at 1357. "Debtors who wish to pay their creditors as little as possible or who wish to avoid working for the benefit of their creditors for a plan period of three to five years, should not choose chapter 13 and instead should seek relief under chapter 7." *In re Martin*, 464 B.R. 798, 806 (Bankr. C.D. Ill.2012).

34.     Another example of the Debtor's lack of good faith in proposing the Plan and, quite frankly, in filing the Case is the myriad of amendments made to schedules B, I and J and the modified plans filed by the Debtor. The Debtor has filed five plans, three schedules I and J, two schedules B, and two Chapter 13 statements of current monthly disposable income. "The

5

accuracy of schedules and statements of affairs is one of several factors to be taken into consideration under the standard of 'good faith' in the filing of a case, but it is a critical factor." *In re Neal*, 2014 *Bankr. LEXIS 1581*\*18 (Bankr.N.D.Ill.).

35. The initial schedule B filed by the Debtor listed assets having a total value of $63,094.07. The amended schedule B filed by the Debtor added a claim against Bosse in the amount of $975.85 for a total asset value of $64,069.92. The second amended schedule B filed by the Debtor added diamond stud earrings (uncovered at an examination of the Debtor by Bosse pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure) increasing the total asset value to $64,369.92. As stated hereafter, Bosse still does not believe the Debtor has accurately scheduled all personal property nor accurately valued the same.

36. The initial schedule I filed by the Debtor discloses average monthly income of $6,820.88. The amended schedule I filed by the Debtor discloses average monthly income of $6,820.88. The second amended schedule I filed by the Debtor discloses average monthly income of $6,689.88. The third amended schedule I filed by the Debtor discloses average monthly income of $8,555.57.

37. The initial schedule J filed by the Debtor discloses average monthly expenses of $6,616.30. The amended schedule J filed by the Debtor discloses average monthly expenses of $6,616.30. The second amended schedule J filed by the Debtor discloses average monthly expenses of $6,458.65. The third amended schedule J filed by the Debtor discloses average monthly expenses of $8,325.52.

38. In addition to the foregoing, as stated earlier, the Debtor has filed two Chapter 13 statements of current monthly disposable income and five Chapter 13 plans. Bosse submits that

when looking at the totality of the circumstances of the Debtor's filing her Case to avoid payment of Bosse's potentially nondischargeable claim and the myriad filings of schedules and plans, the Debtor has not complied with Section 1325(a)(3) and (a)(7) and confirmation of the Plan should be denied. As a matter of fact, even the most recent Plan cannot be confirmed because it contains inaccurate information. In Section A, paragraph 1 of the Plan, the Debtor states that her total household monthly income is $6,689.88 and her total monthly household expenses are $6,458.65, leaving $231.23 available monthly for plan payments. The third amended schedule I filed on June 30, 2014, discloses average monthly income of $8,555.57 and the third amended schedule J filed on July 1, 2014, discloses average monthly expenses of $8,325.52. Curiously, the difference between these figures is $230.05, only $1.18 off of the previous figures contained in the June 12, 2014, fifth modified Plan.

## PLAN DOES NOT COMPLY WITH SECTION 1325(a)(4)

39.     Bosse alleges that the Debtor has not scheduled all of her personal property and has not adequately valued that property and, therefore, the dividend proposed to unsecured creditors is not sufficient. The Debtor has scheduled on her second amended Schedule B (filed January 28, 2014) household goods having a value of $3,100.00, collectibles having a value of $1,500.00, costume jewelry having a value of $100.00, diamond stud earrings having a value of $300.00, bank accounts having values totaling $4,309.00, motor vehicles having values totaling $13,674.00, and office equipment having a value of $200.00. (Security deposit, clothing, qualified retirement accounts and claims against Bosse are not referenced herein as these assets are not germane to the following discussion.)

40.     Bosse will testify that he purchased for the Debtor the diamond stud earrings the Debtor

7

schedules as having a value of $300.00. Bosse's testimony will be that the diamond stud earrings were purchased for $675.00 and that he purchased for the Debtor a sapphire ring (which has both diamonds and sapphires) for $2,100.00. The Debtor does not schedule the sapphire ring. Bosse will also testify that he purchased for the Debtor a Rolex watch for $6,132.08, which does not appear on the Debtor's second amended schedule B. Bosse will also testify to other jewelry purchases for the Debtor, consisting of diamond rings and a wedding band, which do not appear on amended schedule B, having been purchased for the sum of $11,015.26.

41. In addition to the foregoing, Bosse will testify that a list of household furnishings was made in connection with the division of personal property between the Debtor and Bosse pursuant to the Judgment. Bosse will testify that the personal property which was awarded to the Debtor was more detailed than that scheduled by the Debtor in her second amended schedule B. Further, Bosse will testify that the fair market value of the household furnishings awarded to the Debtor totals $39,725.00.

42. Based upon the expected testimony of Bosse, the total value of household furnishings and jewelry owned by the Debtor totals $59,647.34. Adding to this figure the items and values as scheduled by the Debtor on the second amended schedule B (excluding clothing, security deposit, retirement accounts and the Debtor's alleged claims against Bosse), we arrive at a total amount of $79,430.34.

43. The Debtor has claimed as exempt on her schedule C the following: 100% of her checking account, 100% of her qualified retirement accounts, 100% of her alleged claims against Bosse, $500 in clothing, and $6,400 in her 2006 GMC Yukon. Bosse believes that the Debtor has overstated her allowed exemptions. The value of the checking account, as scheduled on

amended schedule B, is $3,591.00. Since the Debtor has claimed 100% in that account, she is only entitled to a maximum exemption in the GMC Yukon of $2,809.00.

44. Deducting the allowed exemptions, as referenced above, in the amount of $6,400.00, from the total asset value in paragraph 42 of $79,430.34, we arrive at an amount of $73,030.34. Deducting a generous expense of ten (10%) percent for costs of sale, we arrive at the amount of $65,727.34, which the unsecured creditors are entitled to receive.

45. The fifth modified Plan provides for monthly payments to the trustee of $200.00 for six (6) months and then $230.00 for fifty-four (54) months. This payment schedule amounts to a total of $13,620.00. After payment of the trustee's statutory commission in the projected amount of $476.70, and payment of attorney's fees in the amount of $2,500.00, the amount remaining to be paid to Bosse's priority claim and unsecured creditors is $10,643.00. This amount is not sufficient to compensate the unsecured creditors pursuant to Section 1325(a)(4) and, therefore, confirmation of the Plan should be denied.

## DEBTOR NOT CONTRIBUTING ALL DISPOSABLE INCOME

46. It is anticipated that the Debtor will argue that since the amended statement of current monthly disposable income ("Form B22C") shows the Debtor to be above the median and line 59 is a negative number, then the Debtor can propose a paltry payment to the trustee.

47. Bosse is of the opinion that Form B22C does not control the plan payment and the Court may look to schedules I and J, as well, in determining whether the Plan has been proposed in good faith.

48. The Supreme Court, in *Hamilton v. Lanning*, 560 U.S. 505 (2010), rejected the "mechanical approach" of looking only to Form B22C to determine projected disposable income.

9

*Lanning* starts with a presumption that the figure on line 59 of Form B22C is the correct figure to determine projected disposable income, but that presumption can be rebutted by showing substantial changes and, therefore, a "forward looking" approach is the more reasonable method in determining projected disposable income. "In cases in which a debtor's disposable income during the 6-month look back period is either substantially lower or higher than the debtor's disposable income during the plan period, the mechanical approach would produce senseless results that we do not think Congress intended. In cases in which the debtor's disposable income is higher during the plan period, the mechanical approach would deny creditors payments that the debtor could easily make." *Id.* at 520. Accordingly, the Supreme Court held that bankruptcy courts, in determining disposable income, can make adjustments in the debtor's income or expenses that are "known or virtually certain at the time of confirmation". *Id.* at 524.

49.     The "forward looking" approach afforded Judge Wedoff the opportunity to make adjustments to the debtor's projected monthly income by allowing deductions for workers' compensation payments that had been made during the six month period preceding the date of filing, but which were not being made post-petition.[1] See, also, *In re Frederickson*, 545 F.3d 652 (8th Cir. 2008) and *In re Baeza*, 398 B.R. 692 (Bankr.E.D.Cal. 2008).

50.     Bosse urges the Court to start with a review of Form B22C, as *Lanning* tells us, but then to turn attention to amended schedules I and J to determine whether the Debtor has proposed her Plan in good faith.

51.     On February 11, 2014, the Debtor filed amended schedules I and J. Amended schedule J

---

[1] *In re Johnson*, 400 B.R. 639 (Bankr.N.D.Ill. 2009)(aff'd, *2010 U.S. App. LEXIS 12961* (7th Cir.))

10

shows total monthly expenses of $6,458.65, down from the original schedule J showing monthly expenses of $6,616.30. The amended schedule J increases electricity and heating fuel by $50.00 and eliminates the water and sewer expense of $60.00. Amended schedule J decreases the clothing expense by $85.00, increases auto insurance by $46.00, increases children's health insurance by $55.35, and eliminates the Debtor's health insurance expense originally listed as $164.00. Accordingly, the monthly disposable income as reflected in amended Schedules I and J is $231.23, as opposed to the original amount scheduled on August 27, 2013, of $204.58.

52. Amended schedule I filed February 11, 2014, shows total monthly income of $6,689.88, which is less monthly income than originally scheduled in the amount of $6,820.88.

53. On June 30, 2014, the Debtor filed her third amended schedule I. This schedule shows total monthly income of $8,555.57, increasing the net income from employment to $2,714.64, increasing child support to $4,039.05, and increasing maintenance to $1,801.88.

54. On February 10, 2014, an order was entered in the Circuit Court granting the Debtor's motion to reconsider and finding that child support should remain in effect at the rate of $1,376.50 "bi-monthly plus the percentage amount based on additional income as set forth in the Judgment For Dissolution of Marriage". In addition, the Debtor is to receive $570.00 bi-monthly in maintenance, plus additional monies in the event Bosse's income exceeds $12,500.00 per month.

55. What is instructive about the order entered in the Circuit Court is that the Court found the Debtor's gross income from employment to be $3,083.33, which was less than that scheduled by the Debtor on amended Schedule I filed February 11, 2014.[2]

---

[2] Another example of the Debtor's lack of good faith in filing the Case and Plan.

11

56. From August 1, 2013, through January 15, 2014, Bosse paid to the Debtor the total sum of $38,246.95. These payments consist of child support, maintenance (both base amount and percentage of commissions) and reimbursement for expenses. Averaging these payments over five and ½ months yields a monthly amount of $6,953.99. Yet, based upon the original schedule I filed by the Debtor reflecting base maintenance in the amount of $1,592.00 and child support in the amount of $2,768.00, the Debtor had not accounted for an additional $2,593.99 (average) received for reimbursement of expenses and additional maintenance based upon commissions earned by Bosse and any gross income earned by Bosse exceeding $12,500.00 per month.[3]

57. On July 1, 2014, the Debtor filed her third amended schedule J showing average monthly expenses of $8,352.52, an increase of $1,866.87, from the second amended schedule J filed February 11, 2014. The Debtor has made the following changes in expenses from the second amended schedule J:

| Category | 2/11/14 schedule J | 7/1/14 schedule J |
|---|---|---|
| food | $1000 | $1300 |
| laundry/dry cleaning | 25 | 100 |
| transportation | 1000 | 1300 |
| auto insurance | 286 | 200 |
| tax on maintenance | 250 | 450 |
| education/school fees | 170 | 230 |
| children's health insurance | 153.65 | 166.52 |
| child expenses as necessary | -0- | 900 |
| anticipated 401k contribution | -0- | 105 |

58. The Debtor also references, in line 19, that the oldest son is starting college and living on campus. The Debtor states that she will be paying half the rent, food and half of his utilities.

---

[3]Another example of the Debtor's lack of good faith in filing the Case and Plan.

12

These are not reasonably necessary expenses, which can be deducted pursuant to Section 1325(b)(3). "*Section 1325(b)(3)* now requires above-median debtors to calculate their disposable income under *subparagraphs (A)* and *(B) of section 707(b)(2)*." In re Saffrin, 380 B.R. 191, 192 (Bankr. N.D.Ill. 2007).

59. Bosse submits that a number of the expenses on the third amended schedule J are not reasonably necessary and exceed the allowable expenses as provided in Section 707(b)(2)(A) and (B). For instance, the Debtor claims $286 for health care related expenses, while line 24B of Form B22C allows only $240 and the Debtor claims $2,700 for food, clothing, laundry, auto insurance, cable, internet, cell phones, pet food and care, swim team fees, and personal care/grooming, while line 24A of Form B22C allows only $1465.

60. The Debtor claims $900 on her third amended schedule J for "child expenses as necessary and ability to pay". Bosse submits that this is not a reasonably necessary expense. Likewise, the pet food and care and swim team fees and extracurricular fees are not reasonably necessary expenses.

61. Accordingly, since the Debtor is not proposing to pay to the Chapter 13 Trustee all disposable income, confirmation of the Plan should be denied pursuant to 11 U.S.C. §1325.

## **PLAN IS UNFEASIBLE**

62. The fifth modified Plan provides for monthly payments to the trustee of $200.00 for six (6) months and then $230.00 for fifty-four (54) months. This payment schedule amounts to a total of $13,620.00. After payment of the trustee's statutory commission in the projected amount of $476.70, and payment of attorney's fees in the amount of $2,500.00, the amount remaining to be paid to Bosse's priority claim and unsecured creditors is $10,643.00. Pursuant to the Plan, the

unsecured creditors are to receive a 10% dividend.

63.   Bosse has a potential unsecured claim in the amount of $87,810.56.[4]

64.   The bar date for filing proofs of claim has expired. Therefore, the total amount of unsecured claims to be treated under the Plan is $124,719.31[5]. This figure is arrived at as follows

    Bosse    $87,810.56;

    PNC    $33,925.00 (other half included in Bosse's potential claim);

    Monroe County
    Tax Bureau    $2,983.75 (other half included in Bosse's potential claim)

    Altair OH    $8,137.57 (already included in Bosse's claim)

65.   Based upon the foregoing, a distribution to unsecured creditors of 10% of the allowed claims would require a distribution of $12,471.93.

66.   The Plan is unfeasible and cannot be confirmed pursuant to 11 U.S.C. §1325(a)(6).

---

[4] Emanating from a potential deficiency judgment after sale of the Pocono Pines property, which may include real estate taxes and homeowners' association fees.

[5] Amount does not include the claim of Altair OH.

WHEREFORE, for the reasons stated in the amended objection to confirmation filed by Timothy L. Bosse and for the reasons stated herein, confirmation of the Debtor's Chapter 13 plan filed June 12, 2014, should be denied.

>Respectfully submitted,
>
>Timothy L. Bosse, Creditor
>
>By: /s/ Joel A. Schechter
>His Attorney

Joel A. Schechter
Attorney No. 3122099
Law Offices of Joel A. Schechter
53 West Jackson Blvd, Suite 1522
Chicago, IL 60604
(312) 332-0267